IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-02385-REB-KLM

JEREMY NECHOL DENISON,

      Plaintiff(s),

v.

COLORADO DEPARTMENT OF CORRECTIONS, C.T.C.F. Clinical Services,
MR. MICHAEL AASEN,
MR. ORVILLE NUEFELD,
MR. LOUIS CABILING,
MR. GREG ROBINSON,
MS. CONNIE BATSON,
MS. SANDY HARRIS,
WILLIAM KLENKE, and
UNKNOWN MEMBER(s) OF ANY OVERSIGHT COMMITTEE,

      Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss Amended Complaint** [Docket No. 37; filed August 6, 2007] ("Motion to Dismiss").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion to Dismiss, Plaintiff's Response [Docket No. 49; filed December 5, 2007]; Defendants' Reply [Docket No. 50; filed December 20, 2007]; the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss [Docket No. 37] be **GRANTED**

**IN PART AND DENIED IN PART**.  The Court further RECOMMENDS that Defendants'

first **Motion to Dismiss** [Docket No. 23; filed April 30, 2007] be **DENIED AS MOOT**.

## I.    Statement of the Case

At the time of filing, Plaintiff Jeremy Nechol Denison was incarcerated at the

Colorado Territorial Correctional Facility ("CTCF") in Canon City, Colorado.  On July

25, 2007, Plaintiff filed his *pro se* Amended Complaint pursuant to 28 U.S.C. § 1343

and 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his

severe pain caused by a herniated disc in his lower back, and that they provided

superior medical treatment to an inmate with similar lower back problems [Docket No.

35].  Plaintiff alleges that this treatment violated his Eighth and Fourteenth Amendment

rights.

Plaintiff alleges that his severe lower back pain began in or around July of 2004.

*Amended Complaint*, p. 2.  At that time, he submitted a request for medical care, and

was seen by Michael Walsh, a Physician's Assistant ("PA"), who ordered x-rays and

prescribed the drugs Motrin and Parafon.  *Id.*  Plaintiff's spinal x-rays showed no

breaks or fractures.  *Id.*  On August 31, 2004, Plaintiff was seen by Russel Cherne, a

second PA, who changed his prescription to Indicon and ordered another set of x-rays.

*Id.*  On October 7, 2004, Plaintiff saw Defendant Dr. Michael Aasen, who prescribed

Tylenol 3 for pain and ordered an electromyography ("EMG") test.  *Id.*  Plaintiff alleges

that he requested a magnetic resonance imaging ("MRI") test at that time, which

request was denied by Defendant Aasen.  *Id.*  On October 25, 2004, Plaintiff states that

he sent a "kite"[1] to the medical department, at which time Defendant Aasen performed another examination and referred Plaintiff to physical therapy. *Amended Complaint*, p. 3. Plaintiff alleges that on November 14, 2004, he sent another kite requesting to see Defendant Aasen. *Id.* On November 15, 2004, he was examined by Christine Miller, a third PA, who again referred him to Defendant Aasen. *Id.* On November 18, 2004, Plaintiff alleges that he was examined by an un-named physical therapist, who indicated that Plaintiff might possibly have "disc trouble" in his back. *Id.* Plaintiff again saw Defendant Aasen on November 24, 2004, at which time Defendant Aasen renewed his Tylenol 3 prescription and again ordered an EMG. *Id.*

Plaintiff alleges that his first EMG was performed on December 10, 2004 by Defendant Dr. Louis Cabiling. *Id.* Plaintiff states that Defendant Cabiling filed his report on the EMG findings on January 31, 2005. *Amended Complaint*, p. 3. On December 15, 2004, Plaintiff alleges that he was examined by a new doctor, Defendant Orville Neufeld. *Id.* Plaintiff states that Defendant Neufeld performed the "same cursory <u>initial</u> examination" as the other physicians. *Id.* (emphasis in original). Plaintiff further states that Defendant Neufeld refused to refill Plaintiff's prescription for pain medications, as he believed that Plaintiff was "malingering," and that Defendant Neufeld also refused to refer Plaintiff to a specialist to determine the cause of his pain. *Id.* Next, Plaintiff states that on December 22, 2004, he submitted a kite requesting a second medical opinion from a non-Department of Corrections ("DOC") specialist, as he felt that the DOC doctors were failing to treat his injury. *Id.* at 4. Plaintiff states that

---

[1] A "kite" is apparently a written form submitted by a prisoner to request medical attention.

this request was denied. *Amended Complaint*, p. 4. On December 31, 2004, Plaintiff saw a physical therapist who reported "positive signs of disc trouble again." *Id.*

Plaintiff was examined by Defendant Aasen on January 4, 2005, but Plaintiff alleges that Defendant Aasen did not perform any tests, that he did not have the results from the EMG test and that his sole treatment was to prescribe Vicodin to Plaintiff for pain. *Id.* Plaintiff alleges that Defendant Aasen told Plaintiff he would refer him to the Orthopedic department for an MRI, but that Defendant failed to provide this referral. *Id.* Plaintiff saw a different doctor, Dr. Asher, on January 31, 2005. *Id.* Plaintiff states that Dr. Asher told him that Defendant Aasen would not agree to allowing an orthopedic evaluation for Plaintiff. *Id.* Plaintiff alleges that on February 14, 2005, he again saw Dr. Asher who provided him with a "trigger point injection" consisting of a "mixture of lidocaine and kenalog" which relieved Plaintiff's pain and provided him with greater mobility for a period of approximately two weeks. *Amended Complaint*, pgs. 4-5.

Plaintiff states that he was scheduled for a second EMG on March 11, 2005 to be performed by Defendant Cabiling. *Id.* at 5. However, Plaintiff alleges that Defendant Cabiling realized that he had previously performed an EMG on Plaintiff and therefore refused to do a second EMG on Plaintiff. *Id.* On March 23, 2005, Plaintiff submitted a kite requesting to see Dr. Asher for another trigger point injection, but alleges that Dr. Asher told him he could not receive another trigger point injection until May. *Id.* On May 20, 2005, Plaintiff again requested to be seen by Dr. Asher, but was informed that she was no longer employed by the DOC. *Id.* Plaintiff was seen by Defendant Greg Robinson, a fourth PA, who gave Plaintiff a trigger point injection. *Id.*

Plaintiff states that this injection failed to provide him with any relief. *Id.* Plaintiff was again seen by Defendant Robinson on June 13, 2005, at which time Defendant Robinson requested an MRI, which was later denied. *Id.* Plaintiff states that on September 1, 2005, he wrote a letter to Defendant Sandy Harris, the Administrator of the Colorado Territorial Correctional Facility Medical Department, apparently regarding his medical treatment, but that Defendant Robinson returned this letter unopened. *Id.* Also on September 1, 2005, Plaintiff states that he submitted a kite requesting an MRI, and this request was denied. *Id.* Plaintiff alleges that he next filed a Step I grievance requesting an MRI that was again denied. *Id.* On December 29, 2005, Plaintiff was seen by a fifth PA, Defendant Connie Batson, who made a second request for an MRI, which was approved. *Id.* On January 27, 2006, an MRI was performed on Plaintiff at St. Thomas Moore Hospital. *Id.*

Following the MRI, Plaintiff received a message from Defendant Batson on February 15, 2006, in which she stated that the MRI showed the existence of arthritis. *Id.* Plaintiff states that he did not believe that this diagnosis was proper, so he requested another medical appointment. *Id.* Plaintiff was seen by a sixth PA, Defendant William Klenke, on March 28, 2006. *Id.* at 6. Plaintiff alleges that at this appointment, Defendant Klenke informed him that there was no other treatment available except medication, as the MRI indicated no signs of a potential disc problem. *Id.* Plaintiff states that he read the MRI report and "interpreted it as having severe language indicating 'protrusion of disc impinging on L5 nerve root.'" *Id.* Next, on April 14, 2006, Defendant Cabiling gave Plaintiff another EMG test. *Id.* Plaintiff alleges that

Defendant Cabiling stated that there was the "presence of irrefutive changes in left leg degeneration – minimal neuropathic changes L4, S1 do [sic] to arthritic process/stenoids." *Id.* Plaintiff also alleges that Defendant Cabiling told him that he needed surgery as soon as possible, and Defendant Cabiling would therefore recommend a referral to a neurosurgeon. *Id.*

Next, Plaintiff alleges that on May 18, 2006, his pain medication, Indocin, became unavailable and no alternative was provided. *Id.* Plaintiff states that on June 20, 2006, he submitted and won a grievance related to his request to see a neurosurgeon as well as the unavailability of his medication. *Id.* Plaintiff states that he was approved to see a neurosurgeon at this time. *Id.* On August 31, 2006, Plaintiff submitted a kite to discuss his consultation with a neurosurgeon, which had not occurred. *Id.* at 7. At this time, Plaintiff was informed by Defendant Klenke that "the committee" was still discussing Plaintiff's consultation with a neurosurgeon. *Id.* Plaintiff states that as of the date of the filing of his Amended Complaint, July 15, 2007, he still had not been seen by a neurosurgeon. *Id.*

Plaintiff further alleges that another inmate, Jack Sease, also was seen by the Medical Department for back pain at the end of 2004 or beginning of 2005. *Id.* Plaintiff alleges that Mr. Sease received an MRI and surgery within six months of submitting his first kite. *Id.*

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He states that his serious medical needs "have been delayed for

at least 34 months now by the medical staff at [CTCF] . . . The defendants failed to provide proper medical care and these allegations go far beyond that of simple mistake or negligence.  Rather, I maintain that the medical care provided was so cursory as to amount to no treatment at all."  *Id.* at 8.  Plaintiff further alleges that "[t]he denial and delay of medical care given to Plaintiff violates the Fourteenth Amendment because the procedure followed and the policy of CTCF medical department in giving that care was not the same as for similarly situated inmate Jack Sease."  *Id.* at 18.  Plaintiff requests compensatory, punitive and future damages as against all Defendants.  *Id.* at 19.  He further requests an injunction compelling CTCF to treat his injury by means of surgery or other appropriate measures.  *Id.* at 18.

Defendants have filed a Motion to Dismiss.  In support of their Motion, Defendants assert four justifications:  (1) Plaintiff fails to state an Eighth Amendment claim upon which relief may be granted; (2) Plaintiff fails to state a claim against the individual Defendants; (3) Plaintiff fails to state a Fourteenth Amendment claim upon which relief may be granted; and (4) Defendants are entitled to qualified immunity.

## II.    Discussion

### A.    Legal Standards Applicable to Plaintiff's Claims

#### 1.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When deciding a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pleaded allegations of the Complaint as true and must construe them in the light most favorable to the Plaintiff.  *Erickson v. Pardus*, _____

U.S. \_\_\_\_, 127 S. Ct. 2197 (2007). Courts should look to the specific allegations of the Complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). The Complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007). Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the Complaint and any documents attached to it as exhibits. *Hall*, 935 F.2d at 1112; *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of Complaint by reference only to the allegations of the Complaint). Here, Defendants assert that Plaintiff fails to state a claim for Eighth and Fourteenth Amendment relief.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal

training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

**B.    Analysis**

As a preliminary matter, I must address the documents that Plaintiff has submitted to the Court for consideration along with his Response to the Motion to Dismiss [Docket No. 51; December 26, 2007] ("Evidence in Support of Response to Motion to Dismiss").  In general, when deciding a motion to dismiss for failure to state a claim, a federal court should not look beyond the boundaries of the Complaint itself. *See MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citation omitted). That is,  "[a] 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P. ] 56.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Fed. R. Civ. P. 12(b)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).

In the instant case, Plaintiff has submitted thirty-four pages consisting of medical documents and records relating to treatment of his lower back injury [Docket No. 51]. As such records would more properly be considered on a Motion for Summary

Judgment, I decline to consider these records and have not relied on them in making my Recommendation.

### 1.    Official Capacity Claims

Plaintiff apparently brings claims against all Defendants in their individual capacities, as he states "[t]his cause of action is against the medical staff as a congregate and each individual in his or her individual capacity . . . ." *Amended Complaint*, p. 8. However, I note that Plaintiff is suing the Colorado Department of Corrections ("CDOC") CTCF Clinical Services for injunctive relief in addition to damages. He states, "I request an injunction to compell [sic] the medical department at CTCF to treat the <u>injury</u> suffered while incarcerated at CTCF by means of surgery or other appropriate measures . . . ." *Id.* at 18 (emphasis in original). While Plaintiff may be attempting to sue CTCF Clinical Services in its individual capacity, such an action is not possible as "[a]n action for injunctive relief no matter how it is phrased is against a defendant in [its] official capacity only; plaintiff seeks to change the behavior of the governmental entity." *Auvaa v. City of Taylorsville*, 506 F.Supp.2d 903, 913 (D.Utah 2007) (quoting *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988) (citation omitted)). As such, I construe Plaintiff's claims against CTCF Clinical Services as being brought against that Defendant in its official capacity.

The Eleventh Amendment is a jurisdictional bar to a suit for damages against the State of Colorado, and any of the defendants in their official capacities are considered an arm of the state for Eleventh Amendment purposes. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, any request for damages against CTCF

Clinical Services in its official capacity is barred by the Eleventh Amendment to the Constitution. *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). However, Plaintiff's request for prospective injunctive relief against CTCF Clinical Services in its official capacity is not barred by the Eleventh Amendment. *Id.* That is, when a private party sues a state officer for prospective injunctive or declaratory relief from an alleged ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see also Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1205 (10th Cir. 2002). Further, injunctive relief may be granted even where defendants raise valid claims of qualified immunity barring plaintiff's damages claims. *Auvaa*, 506 F.Supp.2d at 913 (citations omitted). However, in order to establish his entitlement to this form of relief, Plaintiff's Complaint must include sufficient factual allegations to state a claim for an Eighth Amendment violation. *Abu-Fakher v. Bode*, 175 Fed. Appx. 179, 181 (10th Cir. March 16, 2006) (unpublished decision).

As set out below, the Court finds that, based on the Amended Complaint, Plaintiff can adequately state a claim for an Eighth Amendment violation. Accordingly, he may be entitled to injunctive relief from CTCF Clinical Services. As such, the Court respectfully recommends that any claims for damages against CTCF Clinical Services in its official capacity be dismissed, leaving a sole claim for injunctive relief as against CTCF Clinical Services in its official capacity.

### 2.    Individual Capacity Claims

#### i.    Eighth Amendment Claim

Defendants argue that Plaintiff fails to state a claim for violation of the Eighth Amendment because he has alleged no more than a disagreement as to the appropriate medical treatment for his condition. *Motion to Dismiss*, p. 6. Plaintiff contends that his Complaint "establishes that the defendants were diliberately [sic] indifferent to serious medical needs of plaintiff by way of cursory and inadequate examinations and intentional and/or unreasonable delay or denial of recommended treatment or evaluations." *Response*, pgs. 2-3.

The Eighth Amendment is violated when a prison official acts with "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment also applies to deliberate indifference by prison officials to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* (citation omitted). In the medical context, deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied him access to medical care. *Id.* at 104-05; *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The medical condition complained of must be sufficiently serious, such that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

12

attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Eighth Amendment claims alleging inadequate medical care "involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the [government] official acted with a sufficiently culpable state of mind." *Oxendine*, 241 F.3d at 1276 (internal quotation marks and citation omitted).

Construing Plaintiff's allegations liberally and together, Plaintiff alleges that Defendants failed to recognize and treat his serious medical condition of a herniated lumbar disc, have denied him access to a specialist and have discontinued his medication without providing an alternative. *Amended Complaint*, pgs. 2-7. The Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock*, 218 F.3d at 1211). Plaintiff has alleged that Defendants are aware that he needs access to a neurosurgeon and back surgery and despite this knowledge have failed to ensure that he has received access to a neurosurgeon and the appropriate surgical intervention. *Amended Complaint*, p. 6. He has further alleged that his pain medication had been cancelled permanently and that he has not been provided an alternative. *Id.* at 6-7. Finally, Plaintiff has alleged "risk of further injury to [his] back" and "excruciating pain every minute of every day" of which Defendants are aware. *Id.* at 7.

13

At this early stage of the proceedings and prior to any discovery, the Court cannot find that Plaintiff has failed to include enough facts to state a claim to relief under the Eighth Amendment which is plausible on its face. Taken in the light most favorable to Plaintiff, as required, the allegations are sufficient to state a claim that certain Defendants violated his Eighth Amendment rights by deliberate indifference to his serious medical needs.

### a.    Dr. Michael Aasen

Plaintiff alleges that Defendant Aasen has examined him on four occasions. *Amended Complaint*, pgs. 2-4. He alleges that Dr. Aasen was informed on two separate occasions that Plaintiff may have "disc trouble" but refused to provide a referral to the Orthopedic department. *Id.* at 4. He further alleges that a different doctor, Dr. Asher, informed Dr. Aasen that she believed that Plaintiff needed an orthopedic evaluation, and Dr. Aasen again refused to provide Plaintiff with a referral. *Id.* Plaintiff finally alleges that "the cumulation of Michael Aasen's cursory exams and his curtailing of other doctor's evaluations and recommended treatment caused unnecessary delay of at least a year in getting an MRI done when [Dr. Aasen] knew of the urgency of the medical need but failed to provide care for that need." *Id.* at 9-10. Plaintiff has alleged that Defendant Aasen knew of his serious medical condition, and despite this knowledge, failed to ensure that he received proper treatment. Accordingly, I recommend finding that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Aasen. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (recognizing that the Eighth Amendment forbids the "unnecessary and

wanton infliction of pain")*; Sparks v. Rittenhouse*, 164 Fed. Appx. 712, 717-19 (10th

Cir. January 23, 2006) (unpublished decision) (finding that prisoner's Complaint

survived a motion to dismiss where he alleged that a medical professional denied him

access to medical personnel capable of evaluating the need for treatment); *Sealock*,

218 F.3d at 1211 (finding that inmate's severe pain caused by failure to provide

medical treatment is a serious medical need satisfying objective element of the

deliberate indifference test).

### b.    Dr. Orville Nuefeld

Plaintiff alleges that Defendant Nuefeld provided "recklessly inadequate"

medical care. *Response*, p. 8. He alleges that on December 15, 2004, he was

examined by Defendant Nuefeld, who refused to refill Plaintiff's pain prescription,

refused to provide a referral to a specialist to determine the source of Plaintiff's pain,

and further removed Plaintiff from the "chronic care" list. *Amended Complaint*, p. 3.

Plaintiff alleges that his removal from the "chronic care" list has prevented follow-up on

his medical condition by other providers and is "one of the reasons that [Plaintiff's

condition has] not been treated up to this point," as Plaintiff is required "to submit a kite

every time to see medical and it is treated as a new case." *Response*, p. 8. Plaintiff

has alleged that Defendant Nuefeld knew of his serious medical condition, and despite

this knowledge, failed to ensure that he received proper treatment. Accordingly, I

recommend finding that Plaintiff's allegations are sufficient to state an Eighth

Amendment claim against Defendant Nuefeld. *See Wilson*, 501 U.S. at 297

(recognizing that the Eighth Amendment forbids the "unnecessary and wanton infliction

of pain"); *Sparks,* 164 Fed. Appx. at 717-19 (finding that prisoner's Complaint survived

a motion to dismiss where he alleged that a medical professional denied him access to

medical personnel capable of evaluating the need for treatment); *Sealock*, 218 F.3d at

1211 (finding that inmate's severe pain caused by failure to provide medical treatment

is a serious medical need satisfying objective element of the deliberate indifference

test).

### c.    Dr. Louis Cabiling

Plaintiff alleges that Defendant Cabiling performed his first EMG test on

December 10, 2004. *Amended Complaint*, p. 3.  Second, Plaintiff alleges that he was

scheduled for a second EMG test with Defendant Cabiling on March 11, 2005, but that

Defendant Cabiling refused to perform the second test.  *Id.* at 5.  Plaintiff alleges that

Defendant Cabiling performed a second EMG on April 14, 2006, at which time

Defendant Cabiling recognized that there was the "presence of irrefutive changes in left

leg degeneration – minimal neuropathic changes L4, S1 do [sic] to arthritic

process/stenosis." *Id.* at 6.  Plaintiff contends that on April 14, 2006, Defendant

Cabiling stated that Plaintiff needed surgery as soon as possible and that he would

provide a referral to the neurosurgeon.  *Id.*  Plaintiff believes that Defendant Cabiling's

deliberate indifference to Plaintiff's serious medical condition is illustrated by his failure

to perform the second EMG test on March 11, 2005.  However, I recommend finding

that Plaintiff's allegations concerning Defendant Cabiling are insufficient to create a

reasonable inference that he acted with deliberate indifference to a serious risk of harm

to Plaintiff's health or safety, as Plaintiff's own allegations show that Defendant Cabiling

recognized Plaintiff's serious medical need on April 14, 2006 and acted accordingly. As such, I recommend that Plaintiff's Eighth Amendment claims against Defendant Cabiling be dismissed.

### d. Sandy Harris

Plaintiff alleges that on September 1, 2005, he "decided to write a letter to Sandy Harris who is the Administrator of the Colorado Territorial Correctional Facility Medical Department" but that this letter was "returned unopened by Greg Robinson." *Amended Complaint*, p. 5. Plaintiff also alleges that Defendant Harris was informed by Plaintiff's mother that Plaintiff's medical care was inadequate and that the medical department filed a report on November 12, 2004 stating that the Plaintiff's medical needs were not being met. *Id.* at 12. Plaintiff asserts that "[s]upervisory liability may be asserted against persons in the decision making chain whose deliberate indifference permitted the constitutional abuse to continue unchecked [like] Ms. Harris . . .The policies and procedures that she endorses are unconstitutional and as administrator she allowed [sic] standard of medical care that is unconstitutional because of the delay it caused . . . [and the] unnessary [sic] and wanton infliction of pain." *Id.*

When a defendant is sued in her individual capacity, the Complaint must allege facts that show the defendant *personally participated* in the alleged violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (emphasis added). Therefore, the Tenth Circuit has held that a supervisor cannot be held liable for her employees' actions based solely on her supervisory position. *Serna v. Colo. Dep't of Corr.,* 455 F.3d 1146, 1151 (10th Cir. 2006); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Instead, to establish supervisory liability in a § 1983 action, a plaintiff "must demonstrate an affirmative link between the supervisor's conduct and the constitutional deprivation; liability based on respondeat superior will not do." *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Kaiser v. Lief*, 874 F.2d 732, 736 (10th Cir. 1989)). To establish an affirmative link, a plaintiff "must show that a supervisory defendant, expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation." *Id.* (citations omitted). Supervisory liability must be based upon active unconstitutional behavior, and more than a mere right to control employees. *Serna*, 455 F.3d at 1153.

Plaintiff's allegations regarding Defendant Harris do not establish that she "authorized, supervised, or participated in conduct which caused the constitutional deprivation" of which Plaintiff complains. *Id.* Accordingly, I recommend that Plaintiff's claims against Sandy Harris be dismissed.

### e. PAs Greg Robinson, Connie Batson, and William Klenke

Plaintiff alleges that Defendant P.A. Greg Robinson gave Plaintiff a trigger point injection that failed to provide him any relief. *Amended Complaint*, p. 5. Plaintiff also alleges that Defendant P.A. Batson examined him on December 29, 2005 and requested an MRI, which was denied, and that after Plaintiff received an MRI, Defendant Batson sent him a February 15, 2006 message in which she stated that the MRI showed the existence of arthritis. *Id.* Finally, Plaintiff alleges that Defendant P.A. Klenke examined him on March 28, 2006 and informed him that no treatment, other

than medication, was currently available to him.  *Id.* at 6.

Plaintiff's allegations concerning Defendants Robinson, Batson, and Klenke are insufficient to create a reasonable inference that those Defendants acted with deliberate indifference to a serious risk of harm to Plaintiff's health or safety.  Further, these Defendants are physician's assistants, who may reasonably defer to Dr. Aasen's superior medical judgment in treating Plaintiff's back injury.  *See, e.g., Grady v. Edmonds*, 2007 WL 2986167 at *8 (D. Colo. 2007).  Accordingly, I recommend that Plaintiff's Eighth Amendment claims against Defendants Robinson, Batson and Klenke should be dismissed.

### ii.    Qualified Immunity

Defendants further argue that they are entitled to qualified immunity.  In order to promote the efficient administration of public services, the doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset.  Once a defendant asserts qualified immunity as a defense, the plaintiff must carry the burden of showing qualified immunity is not proper under the circumstances.  "To do this, the plaintiff must show that (1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (internal quotation

marks and citations omitted).

The first step in analyzing a qualified immunity defense is to determine whether the alleged conduct set out a constitutional violation. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003). Plaintiff has alleged that he was denied medication, denied proper treatment, and denied access to medical personnel capable of evaluating his condition for a long period of time. As set out above, Plaintiff has alleged sufficient facts supporting a claim for deliberate indifference to his serious medical needs.

The second step in the analysis of qualified immunity is to determine whether "the constitutional standards [were] clearly established at the time in question." *Smith*, 339 F.3d at 1211. Claims for deliberate indifference to serious medical needs of prisoners have long been recognized under the Eighth Amendment. *See Estelle*, 429 U.S. at 97. Whether or not Plaintiff's claims will be supported on summary judgment, his allegations sufficiently state a claim for deliberate indifference to withstand a Rule 12(b)(6) motion. To the extent that Defendants' Motion to Dismiss is based on a qualified immunity defense, it is properly denied.

### iii.    Equal Protection Claims

Plaintiff next claims that Defendants violated his Fourteenth Amendment equal protection rights by providing superior medical treatment to an inmate named Jack Sease. Plaintiff alleges that "[a]t the end of 2004, or in early 2005 . . . an inmate named Jack Sease went to the medical department because of back pain . . . He was bent over and could not straighten out when he walked [sic] the same as my situation . . . ." *Amended Complaint*, p. 7. Plaintiff further alleges that Mr. Sease received an MRI and

surgery within six months of the time when he submitted his first kite to the medical department. *Id.* Plaintiff believes that he "was given testing procedures and a level of medical care that was not equal to Mr. Sease's especially in the senxe [sic] of testing by MRI or other test that may have shown at an earlier time the herniation of the disc in [Plaintiff's] back." *Id.*

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For Plaintiff to state an equal protection claim, he must allege that Defendants either denied a fundamental right or provided differential treatment based on a suspect classification. *See, e.g., Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995). If the Plaintiff is not a member of a protected class and does not assert a fundamental right, the court must only determine whether the government classification has a rational basis. *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential"). While it is not entirely clear, Plaintiff appears to allege that Defendants have treated him differently based on age, as well as the condition of his body or his tolerance for pain. *Response*, p. 13. However, age is not a suspect class under the Equal Protection lause. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). Further, Plaintiff cites no case law in support of his contention that bodily condition or tolerance for pain are suspect classifications, and no case law exists in support of this claim. Therefore, as neither age, nor bodily condition, nor tolerance for

pain are considered suspect classes under the Equal Protection Clause and because no action was taken which denied Plaintiff a fundamental right, the state may discriminate on these bases if the classifications are rationally related to a legitimate state interest. *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996); *Jacobs, Visconsi, & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1119 (10th Cir. 1991).

The alleged different treatment is subject to rational basis review, which presumes constitutionality and under which Plaintiff bears the burden of establishing irrationality or arbitrariness. *United States v. Phelps*, 17 F.3d 1334, 1345 (10th Cir. 1994). However, Plaintiff's conclusory allegations that he was provided different medical treatment from another inmate do not establish the irrationality or arbitrariness of the decisions made by the DOC medical providers. Plaintiff has simply not alleged a sufficient factual basis for an equal protection claim. Accordingly, I recommend that Plaintiff's Fourteenth Amendment claim be dismissed.

## III.    Conclusion

As set forth above, I respectfully **RECOMMEND** that the Motion to Dismiss [Docket No. 37] be **GRANTED IN PART AND DENIED IN PART**.

Accordingly, I **RECOMMEND** the following:

(1) Plaintiff's Eighth Amendment claim for damages against CTCF Clinical Services in its official capacity be dismissed;

(2) Plaintiff's Eighth Amendment claims against Louis Cabiling, Greg Robinson, Connie Batson and Sandy Harris in their individual capacities be dismissed;

(3) Plaintiff's Fourteenth Amendment claim be dismissed in its entirety.

22

I further **RECOMMEND** that the following claims proceed:

(1) Plaintiff's Eighth Amendment claim for injunctive relief against CTCF Clinical Services in its official capacity;

(2) Plaintiff's Eighth Amendment claims against Michael Aasen, Orville Nuefeld and Unknown Members of Any Oversight Committee.[2]

The Court also **RECOMMENDS** that Defendants' first **Motion to Dismiss** [Docket No. 23; filed April 30, 2007] be **DENIED AS MOOT**.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.1996).

BY THE COURT:

_s/ Kristen L. Mix_____

United States Magistrate Judge

---

[2] As the unknown members of any oversight committee have yet to be discovered or served, and as Defendants have made no Motion to Dismiss Plaintiff's claims against these members, the Court declines to dismiss them *sua sponte* at this early stage of the case.

Dated:  February 26, 2008